STATE of Alaska, Appellant,

v.

Brian SIMPSON, Appellee.

No. A–8028.

Court of Appeals of Alaska.

Aug. 16, 2002.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Quinlan Steiner, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Brian Simpson is charged with driving while intoxicated in Anchorage in September 2000. Because Simpson has two prior convictions for "driving under the influence" in Montana, the State indicted him for felony DWI under AS 28.35.030(n) (third offense within five years).[1] But Simpson questions whether his Montana convictions can properly be used as predicate convictions to support the Alaska felony DWI charge.

Under AS 28.35.030(o)(4), a conviction from another state can serve as a predicate for a felony DWI conviction in Alaska if the other state's law requires proof of elements that are "similar" to the elements of DWI under Alaska law. Thus, to resolve this appeal, we must compare the elements of Alaska's DWI statute, AS 28.35.030(a), to the elements of Montana Statute 61–8–401 ("driving under the influence of alcohol or drugs") and decide whether they are similar.

Simpson contends that Alaska law offers a potential defense to a driver who is involuntarily intoxicated, but Montana law does not. Simpson further contends that the Montana statute differs from Alaska law because it punishes even those defendants who perform no voluntary act. The superior court agreed with Simpson and, for that reason, concluded that Simpson's Montana convictions for driving under the influence did not qualify as prior convictions under AS 28.35.030(o)(4). The court therefore dismissed Simpson's indictment for felony DWI.

For the reasons explained here, we have significant doubts as to whether Simpson's interpretations of Montana law are correct. But more important, AS 28.35.030(o)(4) does not require that an out-of-state statute be identical to Alaska's DWI law—only that it be "similar". Even assuming that Alaska and Montana differ in their treatment of involuntary intoxication or the requirement of a voluntary act, DWI prosecutions involving these situations—*i.e.*, situations where the driver has performed no voluntary act, or where the driver is involuntarily intoxicated—are exceedingly rare. They are so rare that, even with these arguable differences, we conclude that Montana's statute is "similar" to Alaska's. We therefore hold that Simpson's Montana convictions for driving under the influence qualify as prior convictions under AS 28.35.030(o)(4).

### The wording of the two statutes

Alaska's DWI statute defines the crime as "operat[ing] or driv[ing] a motor vehicle" when a person is "under the influence of intoxicating liquor ... or any controlled substance" or, alternatively, "when ... there is 0.08 percent or more by weight of alcohol in the person's blood". This definition is expanded by AS 28.40.100(a)(7), which specifies that the term "driver" includes "a person who ... is in actual physical control of a vehicle".[2]

Montana Statute 61–8–401(1) defines that state's corresponding offense as "driv[ing] or be[ing] in actual physical control of a vehicle" when "a person ... is under the influence of ... alcohol [or] a dangerous drug". (Under Montana law, having a blood-alcohol level of .10 or greater is not an alternative way of committing the offense; rather, if a driver has a blood-alcohol level of .10 or greater, this raises a rebuttable inference that the driver is under the influence. *See* Montana Statute 61–8–401(4)(c).)

It appears that Montana's statute is more restrictive than Alaska's in terms of what actions constitute the crime (since a person can not be convicted in Montana based on their blood-alcohol level alone). However, Simpson argues that Montana's statute is significantly broader than Alaska's regarding both the culpable mental state and the *actus reus* that the government must prove.

1. Since the time of Simpson's offense, the Alaska Legislature has amended AS 28.35.030(n). The offense of felony DWI now requires proof of two prior convictions within the preceding *ten* years. *See* SLA 2002, ch. 60, § 31. This amendment is not relevant to Simpson's case.

2. In September 2000 (the time of Simpson's alleged offense), the statute required a blood-alcohol level of 0.10 percent, rather than 0.08 percent, to trigger criminal liability. This difference is not pertinent to the issue raised in Simpson's appeal.

With regard to the culpable mental state, Simpson claims that involuntary intoxication is a potential defense to a DWI charge in Alaska but it is not a defense in Montana. And, with regard to the *actus reus* of the crime, Simpson claims that a person can be convicted of driving under the influence in Montana even though the person has performed no voluntary act.

*Whether Montana and Alaska law differ regarding their treatment of involuntary intoxication as a potential defense to driving while intoxicated*

In *Morgan v. Anchorage,* 643 P.2d 691 (Alaska App.1982), this Court examined the culpable mental states needed to establish the offense of driving while intoxicated. We rejected the notion that a DWI defendant must know that they are under the influence: "We do not believe that a person who intentionally drinks and intentionally drives must be aware that [they are] under the influence of alcohol in order to be convicted[.]" [3] However, we indicated that the offense of driving while intoxicated requires proof that the defendant knowingly ingested intoxicants and knowingly operated or assumed physical control of a motor vehicle.[4]

(The *Morgan* opinion uses the term "intentionally" instead of "knowingly". However, in context, it is clear that we meant "knowingly". The culpable mental state of "intentionally" refers only to a defendant's conscious desire to achieve a particular result. *See* AS 11.81.900(a)(1). Of the four culpable mental states defined in AS 11.81.900(a)(1)-(4), "knowingly" is the only one that applies to conduct. See *Neitzel v. State,* 655 P.2d 325, 326, 333 (Alaska App.1982), where we concluded that the statutory phrase "inten-

tionally performs an act" really was intended to mean "knowingly performs an act".)

In addition, Alaska case law recognizes the defense of involuntary intoxication.[5] However, neither this Court nor the supreme court has been called upon to examine how the defense of involuntary intoxication might pertain to a charge of driving while intoxicated.

Criminal law texts on this subject suggest that involuntary intoxication is potentially a defense to driving while intoxicated, but only in limited circumstances. For a general discussion of the effect of involuntary intoxication on criminal liability, see Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd edition 1982), pp. 1001–05, and Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* (1986), § 4.10(f), Vol. 1, pp. 558–59. These commentators explain that involuntary intoxication is normally treated as a species of mental defect. It does not constitute an absolute defense to a crime, but a defendant is allowed to show that, because of involuntary intoxication, they meet the test for insanity—for instance, that they were unable to appreciate the wrongfulness of their conduct or to conform their conduct to the requirements of the law, if that is the applicable test in that jurisdiction.[6]

At the same time, the text writers suggest that we may have gone too far in *Morgan* when we suggested that DWI invariably requires proof that the defendant knowingly ingested alcohol or other intoxicants. In their discussion of involuntary intoxication, Professors Perkins and Boyce point out that "[a]n important qualification [must] be noted":

> If one should become intoxicated as a result of an innocent mistake, force[,] or

---

3. *Morgan,* 643 P.2d at 692; *see also Hoople v. State,* 985 P.2d 1004, 1006 (Alaska App.1999) ("[The offense of] driving while intoxicated ... does not require proof of any culpable mental state regarding the circumstance that makes the driving illegal (the fact that the driver was intoxicated or that the driver's blood-alcohol content exceeded [the legal limit] ).").

4. *See Morgan,* 643 P.2d at 692.

5. *See Evans v. State,* 645 P.2d 155, 159 (Alaska 1982) ("The case law is ... clear that involuntary

intoxication ... constitute[s] a valid defense. This is most clearly shown when the intoxication is the result of the force, duress, fraud, or contrivances of another."); *see also State v. Hazelwood,* 946 P.2d 875, 879 (Alaska 1997) ("[I]t is always a defense to prosecution that the conduct was not voluntary. In every case, the alleged [criminal conduct] must have been the product of a free will[.]").

6. *Perkins & Boyce* at 1005; *LaFave & Scott* at 558.

fraud, but after becoming drunk was still sufficiently in possession of his faculties to know what he was doing, and to understand the character of his acts, and with such knowledge and understanding should voluntarily ... drive a motor vehicle on a public highway, the involuntariness of the intoxication would not excuse him because the prohibited act itself was done voluntarily.

*Perkins & Boyce,* p. 999.

In contrast to the way that we interpreted the offense of driving while intoxicated in *Morgan,* Montana law designates driving under the influence as a crime of "absolute liability".[7] According to Montana Statute 45–2–104, the phrase "absolute liability" means that a person can be convicted of the offense "without having, as to each element of the offense, one of the [culpable] mental states of knowingly, negligently, or purposely". In other words, the Montana concept of "absolute liability" is essentially what we would call "strict liability".[8] Thus, one might argue that Montana law would allow a defendant to be convicted of driving under the influence even though the defendant did not knowingly ingest alcohol or other intoxicants.

Simpson contends that the Montana DUI law does indeed impose strict liability on people who are involuntarily intoxicated—people who, for example, become intoxicated after someone slips alcohol or another drug into their drink without their knowledge. But Simpson's argument fails to take account of Montana Statute 45–2–203, which codifies a defense of involuntary intoxication.

Montana Statute 45–2–203 begins with the general rules that an intoxicated person "is criminally responsible for his conduct", that "an intoxicated condition is not a defense to any offense", and that a person's intoxication "may not be taken into consideration in determining the existence of a mental state

which is an element of the offense".[9] But then the statute declares that these rules do not apply if the person was involuntarily intoxicated—if "the defendant proves that he did not know that it was an intoxicating substance when he consumed, smoked, sniffed, injected, or otherwise ingested the substance causing the condition".

We have not been able to find any Montana appellate decision that discusses the interplay between crimes of "absolute liability" and Montana's statutory defense of involuntary intoxication. But in the absence of judicial clarification from the courts of Montana, we are unwilling to assume that the statutory defense of involuntary intoxication is unavailable in prosecutions for driving under the influence.

*Whether Montana and Alaska law differ concerning the requirement of a voluntary act as a necessary predicate for criminal liability*

Simpson argues that, because Montana classifies driving under the influence as a crime of "absolute liability", there is no need for the government to prove that the defendant engaged in a voluntary act. Thus, under Simpson's interpretation of Montana law, a person might be held criminally responsible for being intoxicated and in control of a motor vehicle if, after the person passed out from drinking, the person's companions carried them to a parked vehicle and placed them behind the wheel.

But Montana's doctrine of "absolute liability" only exempts the government from proving the culpable mental states that might otherwise apply to the elements of the crime. The requirement of a voluntary act remains a separate component of liability for any criminal offense. Both Montana law (Montana Statute 45–2–202) and Alaska law (AS 11.81.600(a)) declare that, aside from any cul-

---

7. Montana Statute 61–8–401(7).

8. *See* AS 11.81.600(b): "A person is not guilty of an offense unless the person acts with a culpable mental state, except that no culpable mental state must be proved ... if the description of the offense does not specify a culpable mental state and the offense is ... designated as one of 'strict liability'[.]"

9. The constitutionality of this statute was upheld in *Montana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), *reversing State v. Egelhoff,* 272 Mont. 114, 900 P.2d 260, 264–66 (1995).

pable mental states that may apply to the elements of a particular crime, all crimes require proof that the offender engaged in a "voluntary act".

Our statute, AS 11.81.900(b)(62), defines "voluntary act" as "a bodily movement performed consciously as a result of effort and determination" or "the possession of property if the defendant was aware of the physical possession or control for a sufficient period to have been able to terminate it". Montana law approaches this issue from the other direction; it defines "involuntary act" rather than "voluntary act". But the result is similar, because Montana law defines "involuntary act" as "a bodily movement that ... is not a product of the effort or determination of the actor, either conscious or habitual." Montana Statute 45–2–101(32)(d).

Although the voluntariness of a defendant's conduct is rarely disputed, it remains an implicit element of all crimes. If voluntariness is actively disputed, the government must prove it.[10]

The Montana Supreme Court has recognized that the requirement of a voluntary act is distinct from the culpable mental states that may be required:

> [T]he minimum requirements of any criminal offense are ... a voluntary act and companion mental state. [Montana Statute] 45–2–202 ... provides that "[a] material element of every offense is a voluntary act ...."
>
> This Court has not judicially recognized the automatism defense[, such as when] a defendant acts during convulsions, sleep, unconsciousness, hypnosis or seizures. [But our] criminal code's provisions requiring a voluntary act and defining involuntary conduct adequately provide for such defenses....

*State v. Korell,* 213 Mont. 316, 690 P.2d 992, 1001 (1984).

Simpson nevertheless argues that, under Montana law, a crime of "absolute liability" does not require proof of a voluntary act. He relies on the Montana Supreme Court's statement in *State v. West,* 252 Mont. 83, 826 P.2d 940 (1992), that the jury in a DUI case need not be instructed on the requirement of a "voluntary act".

But the Montana court's decision in *West* appears to confuse the requirement of a culpable mental state with the requirement of a voluntary act. Here is what the court said on this issue:

> In *State v. McDole* [226 Mont. 169, 734 P.2d 683 (1987)] ... we held that "[d]riving under the influence is an absolute liability offense not requiring the proof of the mental state by the State." [Montana Statute] 61–8–401(7) ... states that "[a]bsolute liability as provided in 45–2–104 will be imposed for a violation of this section."

The basic reason for not requiring the state to prove mental intent in DUI cases is that:

> [S]ituations could arise in which defendants could not be convicted under the statute because they were too intoxicated to form the requisite intent. The paradoxical and absurd result would be that the more intoxicated the driver became the better his chances of avoiding liability under the statute.

*McDole,* 734 P.2d at 686 (quoting Erwin, *Defense of Drunk Driving Cases,* § 1.05 (1986)).

The [defendant's] proposed jury instruction required the State to prove the defendant knowingly committed the offense. Absolute liability statutes do not require proof of a mental state. We hold the

---

10. *See State v. Kupihea,* 98 Hawai'i 196, 46 P.3d 498, 504 n. 9 (2002) ("The voluntary nature of an act is part and parcel of the conduct element required to be proven by the prosecution.... [All criminal offenses] require[,] as a minimum basis for the imposition of penal liability, conduct which includes a voluntary act or voluntary omission."); *Smith v. State,* 56 S.W.3d 739, 746 (Tex.App.2001) (the government must prove beyond a reasonable doubt that the possessor of a controlled substance had control over the object long enough to allow them to comprehend that they possessed a controlled substance and to enable them to terminate their control over it); *In re Marriage of Bartlett,* 305 Ill.App.3d 28, 238 Ill.Dec. 357, 711 N.E.2d 460, 463 (1999) (in a prosecution for contempt of court, the government must prove beyond a reasonable doubt that the defendant performed a voluntary act and knew or reasonably should have known that the act contravened a court order).

District Court did not err in refusing the jury instruction defining a voluntary act. *West*, 826 P.2d at 943–44.

As can be seen, the Montana Court recites all the reasons why the government does not have to prove a *culpable mental state* in DUI cases, and then the court inexplicably concludes that the jury did not have to be instructed on the requirement of a *voluntary act*. But, as the Montana court recognized in *Korell* (discussed and quoted above), the requirement of a voluntary act is distinct from the culpable mental states that may be required by a specific criminal offense. The fact that Montana's DUI statute does not require proof of a culpable mental state does not lead to the conclusion that the offense is also exempted from the requirement of a voluntary act.

Thus, on this point as well, we find that Montana law provides no clear answer. Despite the Montana Supreme Court's statement in *West*, we are unwilling to assume that Montana law has dispensed with the requirement of a voluntary act as a necessary predicate for criminal liability under Montana's driving under the influence statute. The opposite appears more likely.

*Conclusion: Whatever the arguable differences between the Montana statute and Alaska's DWI statute, they are still "similar"*

We have discussed (at some length) the purported differences between the Montana offense of "driving under the influence" law and the Alaska offense of "driving while intoxicated". We are not sure that these purported differences exist. Moreover, we conclude that these purported differences are irrelevant to our decision of this case.

As we pointed out early in this opinion, AS 28.35.030(*o*)(4) does not require us to decide whether Montana law and Alaska law are identical; rather, the question is whether Montana's definition of driving under the influence is "similar" to Alaska's definition of driving while intoxicated.

It is conceivable that, in some instances, an involuntarily intoxicated driver would have a defense to DWI under Alaska law but would not have a defense under Montana law. But instances of involuntary intoxication are rare. Moreover, even in such instances, a defendant charged with DWI would probably have to assert, not only that they were involuntarily intoxicated, but also that they had no conscious awareness of being intoxicated before they decided to drive or assume control of a motor vehicle. (As noted above, there is no Alaska decision on this point, but the passage from *Perkins & Boyce* quoted above suggests that this is the applicable rule.)

Thus, any purported difference between Montana law and Alaska law would apply only to a narrow spectrum of unusual cases. As we pointed out in *Borja v. State* (a case which dealt with the related issue of whether an out-of-state conviction qualifies as a prior felony for purposes of Alaska's presumptive sentencing statutes), statutes can be "similar" even though they do not completely overlap in their coverage:

> [E]ven if it were possible to identify conduct that was clearly included within the [other state's] offense and clearly excluded from the Alaska offense, this would not necessarily be fatal to [a finding of "similarity"]. AS 12.55.145(a)(2) does not require that the out-of-state offense be identical to an Alaska felony—only that its elements be "similar" to those of an Alaska felony. Implicit in this statutory wording is the possibility that there will be some acts covered by one statute that will not be covered by the other.

*Borja*, 886 P.2d 1311, 1314 (Alaska App. 1994).

Applying this reasoning, we conclude that Montana's definition of driving under the influence is sufficiently similar to Alaska's definition of driving while intoxicated that a Montana conviction qualifies as a prior conviction under AS 28.35.030(*o*)(4). Thus, Simpson's Montana convictions for driving under the influence can be used as the predicate convictions needed to support a felony DWI charge in Alaska.

The decision of the superior court is REVERSED. The felony DWI charge against Simpson is reinstated, and this case is re-

manded to the superior court for further proceedings on that charge.